IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

HAKIM JOHNSON, Individually and on
Behalf of the Wrongful Death
Beneficiaries of WILL KING, Deceased                                    PLAINTIFF


V.                                                    Cause No. 4:16-CV-044-DMB-JMV


EARNEST LEE, Individually and in His Official Capacity as
Superintendent of the Mississippi State Penitentiary;
CHRISTOPHER EPPS, Individually and in His Official Capacity
as Commissioner of the Mississippi Department of Corrections;
SHENEICE HARTFIELD, Individually and in Her Official Capacity;
JOYCE GRIFFIN, Individually and in Her Official Capacity;
SHARON SCOTT, Individually and in Her Official Capacity;
BLENDEAN EPPS, Individually and in Her Official Capacity
WEXFORD HEALTH SOURCES, INC.;
JOHN /JANE DOES, Prison Administrators, # 1-10 Individually;
JOHN/JANE DOES, Correctional Officers, #1-10 Individually:
AND JOHN/JANE DOES #1-10                                            DEFENDANTS

---

**FIRST AMENDED COMPLAINT**

Jury Trial Demanded

---

COMES NOW, Plaintiff Hakim Johnson, Individually and on Behalf of the Wrongful

Death Beneficiaries of Will King, deceased, by and through counsel, and files his First Amended

Complaint against Defendants, Earnest Lee, Individually and in His Official Capacity as

Superintendent of the Mississippi State Penitentiary; Christopher Epps, Individually and in His

Official Capacity as Commissioner of Mississippi Department of Corrections; Sheneice Hartfield,

Individually and in Her Official Capacity; Joyce Griffin, Individually and in Her Official Capacity;

Sharon Scott, Individually and in Her Official Capacity; Blendean Epps, Individually and in Her

1

Official Capacity; Wexford Health Sources, Inc.; and John/Jane Does Prison Administrators 1-10, Individually; John/Jane Does Correctional Officers 1-10, Individually; and John/Jane Does 1-10 (referred to collectively as "Defendants"). In support thereof, Plaintiff states as follows:

## PARTIES

1.      Plaintiff Hakim Johnson is the son of Will King, deceased.  Will King died on March 7, 2013, while he was in the custody of the Mississippi Department of Corrections (hereinafter referred to as "MDOC") as an inmate at the Mississippi State Penitentiary (hereinafter referred to as "Parchman") located in Parchman, Sunflower County, Mississippi.

2.      Mr. Johnson is an adult resident citizen of Memphis, Tennessee.  Mr. Johnson brings this wrongful death action on behalf of himself and the wrongful death beneficiaries of Will King, deceased.

3.      Defendant Earnest Lee, is the Superintendent of Parchman.  As Superintendent, Mr. Lee is responsible for the daily functioning and administration of Parchman.  He is sued individually under Section 1983 and in his official capacity under Title II of the American with Disabilities Act (hereinafter "ADA").

4.      At all times relevant to this Complaint, Defendant Christopher Epps was the Commissioner of the Mississippi Department of Corrections.[1] Mr. Epps was acting under the color and authority of the laws of the State of Mississippi, as a policymaker for MDOC.  Mr. Epps is sued individually under Section 1983 and in his official capacity under Title II of the ADA.

5.      At all times relevant to this Complaint, Defendant Sheneice Hartfield upon information and belief was a case manager, classification officer, or jailer at Parchman. Ms.

---

[1] On or about November 5, 2014, Mr. Epps resigned from his position as Commissioner of Mississippi Department of Corrections.  Marshall Fisher is the current Commissioner of Mississippi Department of Corrections.

2

Hartifield was acting under the color and authority of the laws of the State of Mississippi. Ms. Hartifield is sued individually under Section 1983 and in her official capacity under Title II of the ADA.

6.      At all times relevant to this Complaint, Defendant Joyce Griffin upon information and belief was a case manager, classification officer, or jailer at Parchman. Ms. Griffin was acting under the color and authority of the laws of the State of Mississippi. Ms. Griffin is sued individually under Section 1983 and in her official capacity under Title II of the ADA.

7.      At all times relevant to this Complaint, Defendant Sharon Scott upon information and belief was a case manager, classification officer, or jailer at Parchman. Ms. Scott was acting under the color and authority of the laws of the State of Mississippi. Ms. Scott is sued individually under Section 1983 and in her official capacity under Title II of the ADA.

8.      At all times relevant to this Complaint, Defendant Blendean Epps upon information and belief was a case manager, classification officer, or jailer at Parchman. Ms. Epps was acting under the color and authority of the laws of the State of Mississippi. Ms. Epps is sued individually under Section 1983 and in her official capacity under Title II of the ADA.

9.      John/Jane Does, Jail Administrators, #1-10 and John/Jane Does, Correctional Officers, #1-10 include prison administrators, correctional officers and other personnel employed at Parchman implicated in the violation of Will King's constitutional rights, whose identities are unknown to the Plaintiff at this time.  Upon discovery of their true identities, John/Jane Does Prison Administrators, #1-10 and John/Jane Does, Correctional Officers, #1-10 will be substituted as prison administrators, correctional officers, and other personnel.  The John Does are sued in their individual capacity.

3

10. At all times relevant to this Complaint, Defendant Wexford Health Sources, Inc. was a for-profit private corporation incorporated and existing in the State of Pennsylvania but doing business in the State of Mississippi and is subject to service of process at 5760 I-55 North, Suite 150, Jackson, Mississippi 39211. Wexford contracted with MDOC to provide medical, dental and mental health care services to prisoners in MDOC's custody at Parchman and other correctional facilities throughout the State of Mississippi. Defendant Wexford Health Sources, Inc. is being sued for acts and omissions committed under the color of state law while exercising its responsibilities pursuant to state law.

11. John/Jane Does #1-10 include any other governmental entities, governmental officials, and or state actors implicated in the violation of Will King's constitutional rights whose identities are unknown to the Plaintiff at this time.

## JURISDICTION AND VENUE

12. This cause of action arises under the United States Constitution, as well as the Civil Rights Act, 42 U.S.C. § 1983, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

13. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the events complained of occurred in this judicial district and division.

## FACTS

14. At all times relevant to this Complaint, Will King was a seventy-one (71) year old disabled inmate in the custody of the Mississippi Department of Corrections.

15. Prior to Mr. King's incarceration, he injured his leg while at work resulting in a permanent injury to his leg. As a result of the work related injury, Mr. King walked with a noticeable limp and also exhibited physical signs of difficulty when walking.

16.     Mr. King also had other health related issues. Due to his age, chronic health issues, and difficulty walking, Mr. King should have been classified as a special needs offender.

17.     On or about November 29, 2012, Mr. King was transferred to Unit 26 of Parchman from South Mississippi Correctional Institution (herein after "SMCI") located in Leakesville, Mississippi.

18.     Upon the transfer of Mr. King to Parchman, it became the duty of each of the Defendants to exercise reasonable care for the safety, safekeeping and well-being of Mr. King.

19.     Immediately after the transfer, Mr. King told Defendants that he had a bottom bunk profile.  Mr. King also told Defendants that he was prescribed the bottom bunk profile, because he was not able to access the upper bunk due to his disability and age.

20.     Mr. King exhibited signs and tendencies, and other outward signs that should have placed Defendants on notice that Mr. King was not able to access the upper bunk due to his disability and age.

21.     Despite Mr. King's medical profile prescribing him a bottom bunk and the visible signs of his disability, Defendants deliberately failed to assign Mr. King a bottom bunk.

22.     On or about December 20, 2012, Mr. King was given a second medical profile, prescribing him a bottom bunk due to his disability and age.

23.      Defendants deliberately ignored Mr. King's second medical profile, prescribing him a bottom bunk, and instead continued to assign him a top bunk.

24.     Because of the two medical profiles assigning Mr. King a bottom bunk along with the visible signs of his disability, Defendants knew or should have known that Mr. King, a seventy-one (71) year old disabled man that walked with a limp and had difficulty walking, could not climb

into, or out of, a top bunk without falling and sustaining serious bodily harm and/or death. Defendants deliberately disregarded the risk in assigning Mr. King a top bunk.

25.     On or about January 14, 2013, Mr. King fell from the top bunk in his cell, sustaining severe injuries including, but not limited to, a concussion; abrasions to his head, face and arms; bruised ribs; pain; and headaches.

26.     After the accident Mr. King continued to suffer headaches and stomach and abdominal pains. There was also visible bruising on his head, face and chest, from the injuries he sustained from the fall.  Furthermore, the abrasion on his head would continuously bleed.

27.     Defendants deliberately ignored Mr. King's numerous requests for medical care.

28.     Defendants' indifference to Mr. King's safety and serious medical needs proximately caused his death.

<u>**COUNT ONE**</u>

**DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW**

29.     Plaintiff re-alleges and asserts those facts and allegations contained in paragraphs 1-28.

30.     At all times relevant to this Complaint, Defendants Epps, Lee, Wexford Health Sources, Inc. and other prison administrators, personnel and correctional officials whose identity is not known to Plaintiff at this time, were employed by the state and acted under color of law.

31.     At all times relevant to this Complaint, Defendant Christopher Epps was the Commissioner of the Mississippi Department of Corrections, and Defendant Earnest Lee was the Superintendent of Parchman. Both Defendants are charged with the formulation and implementation of customs, practices, policies, and/or directives complained of herein, and thereby committing or causing the acts or omissions which deprived Will King, the deceased, of his civil

6

and constitutional rights, including those secured by the Eighth and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983, under color of state law.

32.     At all times relevant to this Complaint, it was the policy of MDOC to develop a written classification plan for all officers. Policy Number 22-01. The classification plan specifies the objectives of the classification systems and methods for achieving them. *Id.* Some of those plan objectives include identifying offenders housing needs and those offenders with special needs.

33.     At all times relevant to this Complaint, it was also the policy of MDOC to recognize and provide for the special need offenders. Policy Number 22-04. The policy defines special need offenders are those offenders requiring special care, custody and control due to their age, medical, or physical disorders. *Id.*

34.     At all times relevant to this Complaint, it was also the policy of MDOC to provide appropriate housing for special need offenders. Policy Number 22-04.

35.     Despite Mr. King's chronic health issues, age and difficulty walking, Defendants violated Policy Number 22-04 by failing to classify Mr. King as a special needs offender.

36.     Defendants also failed to provide Mr. King with appropriate housing, specifically including his request for a bottom bunk, despite his many requests for same.

37.     Although Superintendent Lee is responsible for the day to day operations of Parchman, Lee has no personal knowledge of the identity of the Parchman employee(s) responsible for ensuring that special needs offenders, like Mr. King, receive accommodations related to their disability needs in the areas of mobility, medical care, and other prison programs and activities.

38.     A custom or practice developed, through then Commissioner Epps and Superintendent Lee, as policymakers for MDOC and Parchman, which was also shared among Defendants Wexford Health Sources, John/Jane Does Correctional Officers, John/Jane Does

Prison Administrators, and other John/Jane Does personnel at Parchman, to deliberately disregard medical needs and/other medical accommodations of special needs offenders in their custody and control.

39.     Defendants Epps, Lee, Wexford Health Sources, and other prison administrators, correctional officials, and personnel whose identity is unknown to the Plaintiff at this time were deliberately indifferent to the medical needs and safety of special need offenders in their custody; and the policy which they thereby established under color of law resulted in the suffering and the death of Will King. Thus, Defendants are liable for the violation of Will King's constitutional and civil rights.

40.     Acting under color of law and pursuant to official policy, custom and/or practice, Defendants Epps, Lee, Wexford Health Sources and other prison administrators, personnel and correctional officials whose identity is unknown to the Plaintiff at this time, knowingly, recklessly, or with deliberate indifference to Will King's rights failed to adequately provide for Mr. King's safety, safekeeping and well-being.

41.     Acting under color of law and pursuant to official policy, custom and/or practice, Defendants Epps and Lee knowingly, recklessly or with deliberate indifference to Will King's rights failed to instruct, supervise, control and discipline on a continuing basis prison administrators, personnel and correctional officials in their duties with respect to the constitutional and civil rights of prisoners in their custody, including the right to adequately provide for the safety, safekeeping, and well-being of special needs offenders, such as Mr. King.

42.     Defendant Lee knowingly, recklessly or with deliberate indifference to Will Kings' rights failed to train or supervise Parchman employee(s) to identity special need offenders and to ensure that special need offenders receive disability related accommodations.

43.     Thus, acting under color of law and pursuant to official policy or custom, Defendants Epps and Lee directly or indirectly approved, acquiesced in, or otherwise participated in the acts or omissions which deprived Will King of his civil and constitutional rights.

## COUNT TWO

## FAILURE TO ADEQUATELY TRAIN OR SUPERVISE PRISON PERSONNEL

44.     Plaintiff re-alleges and asserts those facts and allegations contained in paragraphs 1-43.

45.     MDOC is required by law to provide prison personnel and correctional officers with sufficient training to adequately identity special need offers to provide for their safety, safekeeping, and well-being.

46.     Acting under color of law and pursuant to official policy, custom, and/or practice, Defendants Epps and Lee as policymakers for Parchman failed to adequately train the correctional officers, administrators, and personnel employed by Parchman in a sufficient manner to adequately provide for the safety, safekeeping, and well-being of disabled, elderly prisoners with serious medical needs.

47.     Defendant Lee does not have personal knowledge of the Parchman employee(s) responsible for ensuring that special needs offenders, like Mr. King, receive accommodations related to their disability needs in the areas of mobility, medical care, and other prison programs and activities. As such, Defendant Lee failed to adequately train the correctional officers, administrators, and personnel employed by Parchman in a sufficient manner to adequately identify special need offenders and to ensure that such officers receive accommodations related to their disability needs.

9

48.     Defendants Epps, Lee, Wexford Health Sources and other prison administrators, personnel and correctional officials whose identity is unknown to the Plaintiff at this time were deliberately indifferent to Mr. King's right to receive adequate medical treatment and to be kept safe and free from harm while in custody, and this was due to Defendants Epps and Lee's failure to properly train pursuant to policy established by MDOC under color of law. This failure to adequately train and deliberate indifference resulted in the suffering and death of Will King.

49.     Thus, acting under color of law and pursuant to official policy or custom, Defendants Epps and Lee directly or indirectly approved, acquiesced in, or otherwise participated in the acts or omissions which deprived Will King of his civil and constitutional rights.

50.     Defendants' failure to properly train prison correctional officers, administrators, and personnel at Parchman resulted in the violation of Will King's civil and constitutional rights and caused him to suffer the ultimate injury of death.

## COUNT THREE

## DENIAL OF MEDICAL TREATMENT

51.     Plaintiff re-alleges and asserts those facts and allegations contained in paragraphs 1-48.

52.     Defendants deliberately disregarded Will King's requests for medical treatment despite his numerous complaints of pain and visible bruising on his head, face and chest which should have made it obvious to Defendants that Mr. King was in serious need of medical attention.

53.     Defendants' conduct resulted in the violation of Will King's civil and constitutional rights and caused him to suffer the ultimate injury of death.

## COUNT FOUR

### VIOLATION OF AMERICANS WITH DISABILITIES ACT

54.     Plaintiff re-alleges and asserts those facts and allegations contained in paragraphs 1-53.

55.     Will King was a disabled person as defined under Title II of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C.A. §12131.

56.     Pursuant to the obligations of the ADA, Defendants were to provide Mr. King, a special needs offender, who was mobility-impaired with a bottom bunk.

57.     Defendants' failure to provide Mr. King with a bottom bunk, or other means of accommodation so that he could safely access his bunk, constituted unlawful and intentional discrimination on the basis of his disability in violation of the ADA. Defendants' failure to comply with their obligations under the ADA was a proximate cause of Mr. King falling from his top bunk and sustaining severe injuries which ultimately resulted in his death.

## DAMAGES

58.     Plaintiff re-alleges and asserts those facts and allegations contained in paragraphs 1-57.

59.     As a proximate result of Defendants' violation of Will King's civil and constitutional rights as described above, Plaintiff seeks actual and compensatory damages, including but not limited to, funeral and burial expenses, Will King's pain and suffering prior to death and the Plaintiff's loss of Will King's society and companionship.

60.     Defendants' actions, omissions, and conduct were done willfully and egregiously, without just cause, and in callous, conscious and/or knowing disregard for Plaintiff's constitutional rights and personal safety. Moreover, Defendants' actions, omissions, and conduct evidenced malice and a callous disregard for the safety and well-being of other human beings. Plaintiff

11

specifically requests an award of punitive damages in an amount to deter the Defendants from similar or like willful, wanton, or egregious conduct.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests a trial by jury and demands from Defendants actual and compensatory damages in an amount to be determined by the trier of fact; punitive damages in an amount to deter similar or like conduct by these Defendants; attorneys' fees; pre-judgement interest; post judgment interest; all costs incurred in this civil action; and such other relief as the Court and the jury deem just.

Respectfully submitted, this the 25th day of August, 2016.

HAKIM JOHNSON, INDIVIDUALLY AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF WILL KING, DECEASED

BY: /s/ LaToya T. Jeter_____
    LaToya T. Jeter, MSB #102213
    *Attorney for Plaintiff*

**OF COUNSEL:**

LaToya T. Jeter, MSB# 102213
**BROWN BASS & JETER, PLLC**
Post Office Box 22969
Jackson, Mississippi 39225
Telephone: (601) 487-8448
Fascimile: (601) 510-9934